**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALBERTO TEJERA,

Plaintiff,

v. Case No. 3:25-cv-986-WWB-MCR

DUSTIN DOUGLAS, CLIFFORD DEAN, DUSTIN THOMAS, TERRY KRUEGER, SHERIFF H.D. DELOACH, III and CHIEF JASON L SHAW SR,

Defendants.
_________________________________/

**ORDER**

THIS CAUSE is before the Court on Defendant Chief Jason L. Shaw Sr.'s Motion to Dismiss (Doc. 21), Defendant Sheriff DeLoach's Motion to Dismiss (Doc. 22), and Defendant Dustin Douglas's Motion to Dismiss (Doc. 24), and Plaintiff's Responses (Doc. Nos. 26, 27, 28).[1] For the reasons set forth below, Defendants' Motions will be granted.

## I. BACKGROUND

Plaintiff, Alberto Tejera, suffers from bipolar disorder. (Doc. 20, ¶ 1). On September 14, 2022, Plaintiff went to the HCA North Florida Putnam Hospital because he was having a mental health episode. (*Id.* ¶ 10). The hospital informed Plaintiff that he was being discharged, but Plaintiff refused to sign discharge paperwork because he did not have a safe ride home and did not have any shoes. (*Id.* ¶¶ 11–12). As a result of

[1] The Amended Complaint (Doc. 20), Shaw's Motion, and two of Plaintiff's Oppositions fail to comply with this Court's January 13, 2021 Standing Order. In the interests of justice, the Court will consider the filing, but any further failures to comply with all applicable rules and orders of this Court, including the Standing Order, may result in the striking or denial of filings without notice or leave to refile.

Plaintiff's refusal, the hospital called the Palatka Police Department ("**PPD**"), and Plaintiff was arrested by Defendant Terry Krueger for trespass after warning. (*Id.* ¶¶ 13–14). Krueger transported Plaintiff to the Putnam County Jail ("**PCJ**"). (*Id.* ¶¶ 15, 17). Plaintiff informed Krueger that he had a mental illness and needed to see a psychiatrist. (*Id.* ¶ 15).

When Plaintiff arrived at the Jail, he was instructed to sit on the bench in the booking area while paperwork was processed. (*Id.* ¶ 19). Plaintiff alleges that due to his mental state, he was unable to remain seated and Defendants Clifford Dean and Dustin Thomas called for Defendant Dustin Douglas to come to the booking area. (*Id.* ¶¶ 20–21). Dean, Thomas, and Douglas work for the Putnam County Sherriff's Office ("**PCSO**"). (*Id.* ¶¶ 2–4).

Plaintiff alleges that Douglas eventually removed Plaintiff's handcuffs and then proceeded to forcefully throw Plaintiff to the floor and hit him approximately thirty times with his closed fist in the head, face, and body. (*Id.* ¶¶ 24, 28–29). At the same time, Thomas was also striking Plaintiff and tazed him the lower back, while Dean tazed Plaintiff in the calf. (*Id.* ¶¶ 30–31). Plaintiff alleges that Dougals subsequently bragged about his action to fellow officers and then obtained and distributed video of the incident to other PCSO officers. (*Id.* ¶¶ 33–34, 46–47). Plaintiff alleges that Krueger witnessed the attack but failed to intervene and Dean and Thomas failed to intervene to stop the aggressive actions of Douglas. (*Id.* ¶¶ 39–40).

Krueger transported Plaintiff to the hospital, where it was determined that Plaintiff suffered, among other injuries, from two broken orbital sockets. (*Id.* ¶¶ 41–42). Douglas also went to the hospital to have his knuckles examined and, while there, began to verbally berate Plaintiff. (*Id.* ¶¶ 43–44). As a result of the interaction, a nurse made a

formal complaint to the PCJ regarding Douglas's behavior. (*Id.* ¶ 45). Despite a policy that a use of force report be prepared, neither Thomas nor Douglas filed such a report after the incident with Plaintiff. (*Id.* ¶ 50).

As a result, Plaintiff alleges the following claims: use of excessive force in violation of the Fourth Amendment against Douglas, Dean, Thomas, and Krueger (Count One), 42 U.S.C. § 1983; deliberate indifference against Douglas, Dean, Thomas, and Krueger (Count Two), 42 U.S.C. § 1983; failure to train against Chief Jason L Shaw, Sr. in his official capacity as Chief of PPD and Sheriff H.D. DeLoach, III in his official capacity as Sheriff of the PCSO (Count Three), 42 U.S.C. § 1983; battery against Douglas, Dean, Thomas, and Krueger (Count Four); and negligence against Shaw and DeLoach (Count Five). (*See generally id.*).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

First, Douglas, proceeding pro se, moves to dismiss the claims against him because he is not the Dustin Douglas named in the Amended Complaint. Specifically, Douglas states that he is not and has never been an officer in the PPD or PCSO and has never been employed by or associated with Putnam County. Plaintiff does not dispute the facts set forth in Douglas's Declaration or argue that he is, in fact, the correct Dustin Douglas. Instead, Plaintiff asks that the Court quash service as to the Dustin Douglas residing at 3444 Rustic Oak Trail, Middleburg, Florida, and permit Plaintiff leave to find and serve the correct Dustin Douglas.

Once service has been challenged, "Plaintiff has the burden of demonstrating that service of process was proper." *Lazaro v. U.S. Dep't of Agric.*, 186 F. Supp. 2d 1203, 1217 (M.D. Fla. 2001). "If process is served on the wrong person or otherwise improperly served, the action does not die; rather a new summons should be issued and good service attempted." *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 96 F.R.D. 175, 178 (S.D. Ga. 1982) (quoting 2 Moore's Fed. Practice § 4.06-1, at 4-76-78 (2d ed. 1982)); *see also Teal v. Bondi*, No. 3:15-cv-1402-J, 2018 WL 1082438, at *1 (M.D. Fla. Feb. 28, 2018). Accordingly, because Plaintiff has proffered no evidence that service on this individual was proper, the Court will quash service. To the extent that Plaintiff requests leave to

serve the correct individual, the request will be denied without prejudice to Plaintiff filing a motion for such relief. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").

Next, both Shaw and DeLoach move to dismiss Count Three and argue that Plaintiff's claims fail to plausibly allege municipal liability in accordance with *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (quotation omitted). Thus, Plaintiff's claims against Shaw and DeLoach in their official capacities are municipal liability claims against the City of Palatka and Putnam County respectively. "For § 1983 liability to attach to a municipality, 'a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *McDonough v. Mata*, 489 F. Supp. 3d 1347, 1358 (S.D. Fla. 2020) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). To establish a county's policy, a plaintiff may "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quotation omitted).

Alternatively, the Supreme Court recognizes “limited circumstances” under which “failure to train” can give rise to *Monell* liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). “[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.” *Id.* at 388. “To establish a ‘deliberate or conscious choice’ or such ‘deliberate indifference,’ a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.” *Gold v. City of Mia.*, 151 F.3d 1346, 1350 (11th Cir. 1998).

In Count Three, Plaintiff alleges that both Shaw and DeLoach failed to train officers in the following ways: intervening in or reporting the use of excessive force, the proper handling of uncooperative individuals in the booking process, and proper handling of individuals with mental illnesses. The allegations set forth in, and incorporated into, Count Three focus exclusively on the incident involving Plaintiff in this case.[2] “A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.” *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011). The Eleventh Circuit has held that, because a single incident is insufficient to establish a claim, a pleading that focuses almost exclusively on the

[2] Although Plaintiff also alleges that he faced similar conduct in a subsequent arrest and detention in November 2024, (*see* Doc. 20, ¶¶ 53, 58, 79), he fails to allege any facts surrounding this second incident. Even if Plaintiff had alleged such facts, he fails to provide any legal authority that events occurring after the date of the alleged event triggering *Monell* liability can provide support for the alleged knowledge or the need for training. *See Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1371 (11th Cir. 2024) (holding that the plaintiff could not rely on news articles that did “not show that these incidents happened *before*” the incident at issue in the case “or that they involved circumstances” similar to those alleged).

alleged violation in the pleading, plaintiff's case is likewise insufficient. *See Marantes v. Mia.-Dade Cnty.*, 649 F. App'x 665, 673 (11th Cir. 2016); *see also Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023); *Reed v. Waters*, No. 3:24-cv-463, 2024 WL 4529253, at *5–6 (M.D. Fla. Oct. 18, 2024); *Baker v. Vihmann*, No. 8:21-cv-2851, 2022 WL 22568617, at *2 (M.D. Fla. May 18, 2022). Thus, to the extent Plaintiff relies on a pattern or practice theory, his failure to train claim is insufficiently alleged.

Alternatively, Plaintiff argues that this case falls within the "single incident" or "obvious need" theory of *Monell* liability. The Supreme Court has recognized "the possibility that 'single-incident' liability could attach to a municipality 'in a narrow range of circumstances' where there was an 'obvious need for specific legal training,' regardless of the absence of prior similar incidents." *Vielma v. Gruler*, 808 F. App'x 872, 882 (11th Cir. 2020) (quoting *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011)). "This second possibility—the 'obvious need' theory—is based on the hypothesis that 'in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Reed*, 2024 WL 4529253, at *7 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). However, "[i]t is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quotation omitted). Rather, the plaintiff must also show that there is "a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference

of deliberate indifference by city policymakers to the need to train or supervise." *Id.* (quotation omitted).

Plaintiff fails to support his arguments regarding the reporting of the use of force, intervention, and proper handling of uncooperative detainees with any legal authority. Plaintiff also relies on conclusory statements regarding the obvious nature of the need to train in both his pleading and his Responses. (*See* Doc. 20, ¶¶ 52, 56; Doc. 26 at 11–13; Doc. 27 at 14–15). Here, Plaintiff specifically alleges that officers are required to report the use of force. (Doc. 20, ¶ 50). Thus, even without proper training, it is not clear that an officer will make the wrong decision or fail to comply with the requirement. There are no allegations that Shaw or DeLoach routinely failed to enforce such a requirement or otherwise created an atmosphere that would undermine the requirement. *Cf. Smith v. City of Huntsville*, No. 5:14-cv-555, 2016 WL 5724667, at *6–7 (N.D. Ala. Sept. 30, 2016). Similarly, Plaintiff fails to explain why a lack of proper training on intervention or proper use of force on resisting individuals would produce a high likelihood that officers would make the wrong decision. *See id.* at *4; *Flewellen v. City of Macon*, No. 5:15-CV-86, 2016 WL 5662026, at *4 (M.D. Ga. Sept. 29, 2016).

Plaintiff relies on a single case for the proposition that the failure to provide training on the handling of mentally ill persons is so obvious that it falls within the single incident exception. In *Young v. City of Augusta ex rel. DeVaney*, the Eleventh Circuit recognized that a claim that jail employees were inadequately trained to recognize and respond to mentally ill inmates was cognizable against a municipal defendant "if the deficiency reflects deliberate indifference by City policymakers to the rights of inmates and it is closely related to the ultimate injury." 59 F.3d 1160, 1171 (11th Cir. 1995). Nevertheless,

the Eleventh Circuit then summarily stated that the plaintiff's case did not fall within the single incident exception. *Id.* at 1172 ("[T]hat police officers were inadequately trained in diagnosing the symptoms of emotional illness—falls far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city." (quoting *City of Canton v. Harris*, 489 U.S. 378, 396–97 (1989) (O'Connor, J., concurring in part))); *see also O'Gwynn v. City of Foley*, No. Civ.A. 00-0273, 2002 WL 32993824, at *5 (S.D. Ala. Sept. 20, 2002) (noting that the argument that the need to train officers to deal with the mentally ill "was obvious so that no other notice was necessary . . . is foreclosed by *Young*"). The Eleventh Circuit has subsequently denied similar arguments regarding the use of force on mentally ill individuals. *See West v. Lakatos*, No. 24-13197, 2025 WL 3442824, at *6 (11th Cir. Dec. 1, 2025); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015); *see also Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1256 (M.D. Ala. 2010) ("Based upon the Eleventh Circuit's clear reluctance to extend failure-to-train liability . . . , an extension of the failure-to-train liability to including training on proper techniques to restrain mentally impaired individuals is not justified."). Accordingly, absent persuasive authority to the contrary, the Court is not convinced that Plaintiff has adequately alleged a claim based on the single-incident theory regarding the failure to train officers on the handling of mentally ill detainees.

Finally, even if the Court were convinced that liability could extend to the situations alleged in Plaintiff's pleading under the single-incident theory, Plaintiff's Amended Complaint still would fail to set forth sufficient factual allegations to state a claim under that theory. For example, Plaintiff alleges a lack of training but fails to allege what training

should have been provided, how the failure to provide that training resulted in the alleged constitutional violation, or why it is highly predictable that the failure to provide training will result in constitutional violations. *See Nelson v. Jacks. Sheriff's Off.*, No. 3:23-cv-343, 2024 WL 3952426, at *2 (M.D. Fla. Aug. 26, 2024); *Davis v. City of Montgomery*, 220 F. Supp. 3d 1275, 1284–85 (M.D. Ala. 2016). Therefore, Count Three will be dismissed as to both Shaw and DeLoach.

In Count Five, Plaintiff alleges a claim for negligence against Shaw and DeLoach for the actions taken by the individual officers. First, Shaw and DeLoach argue that Count Five should be dismissed because they cannot be held vicariously liable pursuant to section 768.28(9)(a), Florida Statues to the extent it is alleged that "the acts or omissions of an officer, employee, or agent . . . [were] committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." In response, Plaintiff argues that he does not allege in Count Five that the individual officers acted in bad faith, with malicious purpose, or with wanton and willful disregard. Such allegations appear in Count One and Two but are not incorporated by reference into Count Five or otherwise set forth in Count Five. Neither Shaw nor DeLoach argue that the allegations of Count Five otherwise fall within the prohibition set forth in section 768.28(9)(a) or cite any other legal authority supporting dismissal on this basis.

Next, Shaw and DeLoach argue that, to the extent Count Five is premised on the use of excessive force, you cannot negligently commit an intentional tort. "Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th

Cir. 2009) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)); *see also Reed*, 2024 WL 4529253, at *10. Nevertheless, "a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force," but "the negligence component must pertain to something other than the actual application of force during the course of the arrest." *Sanders*, 672 So. 2d at 48 (citations omitted). Plaintiff largely fails to respond to this argument. Having reviewed Count Five and the Amended Complaint as a whole, it appears that Count Five, to the extent it is premised on the use of force, fails to allege a negligence component outside the use of force during the course of Plaintiff's encounter with the individual officers. Therefore, to the extent Count Five alleges a negligence claim based on the use of force, his claim will be dismissed.

Finally, Shaw argues that to the extent Count Five instead alleges a claim for negligent training, Plaintiff has failed to adequately allege the elements of such a claim and, even if Plaintiff adequately alleges such a claim, Shaw is immune. In analyzing such a claim, the Court "first consider[s] whether [the plaintiff] has alleged sufficient facts under which the City, if a private entity, would be liable . . . in accordance with the general laws of Florida. If so, [the Court] then analyze[s] whether . . . Florida's waiver of sovereign immunity nonetheless bars tort liability on this claim." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) (internal citations omitted); *see also Gelbard v. City of Miami*, 845 F. Supp. 2d 1338, 1340 (S.D. Fla. 2012).

"A plaintiff asserting a negligent training claim must allege that it was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running

to the plaintiff." *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1388 (S.D. Fla. 2014). Shaw's argument that Plaintiff has failed to adequately allege the elements of negligent supervision is conclusory and underdeveloped. Shaw fails to specify what element or elements Plaintiff has not alleged and to provide any legal authority in support of his argument. Having reviewed the Amended Complaint, the Court is satisfied that Plaintiff has sufficiently alleged the elements of a negligent training claim under Florida law.

Nevertheless, as Shaw points out, "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis*, 260 F.3d at 1266. Accordingly, claims regarding the reasonableness of training policies and decisions are typically barred by the discretionary function exception to the waiver of sovereign immunity. *Id.*; *see also Lopez v. City of Opa-Locka*, No. 24-22076-CIV, 2024 WL 4212907, at *11 (S.D. Fla. Sept. 17, 2024) ("Claims for negligent training are typically barred by sovereign immunity because a decision regarding how to train officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." (quotation omitted)).

In response, Plaintiff argues that he has alleged an operational act, not a discretionary act. The Eleventh Circuit has recognized that alleged negligent training in "the implementation or operation of [a] training program" may overcome a claim for sovereign immunity where the plaintiff alleges the implementation of the program, not merely its content. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *see also Alexander v. Sheriff of Indian River Cnty.*, 724 F. App'x 744, 748 (11th Cir. 2018).

Courts have found allegations that government entities failed to implement their training regimens, failed to train specific officers in accordance with their policies, or other failures relating to existing policies sufficient to overcome a sovereign immunity challenge at the motion to dismiss stage. *See Ratlieff v. City of Fort Lauderdale*, No. 22-CV-61029, 2023 WL 3750581, at *13 (S.D. Fla. June 1, 2023); *Celestin v. City of Ocoee*, No. 6:21-cv-896, 2021 WL 7543133, at *2 (M.D. Fla. Oct. 28, 2021); *Etayyem v. Gualtieri*, No. 8:12-cv-1672-T, 2012 WL 5035252, at *2 (M.D. Fla. Oct. 17, 2012). In the Amended Complaint, Plaintiff alleges that "there were standard operating procedures" for both the Putnam County Jail and PPD officers and that both Shaw and DeLoach failed to "properly" train the individual officers. (Doc. 20, ¶¶ 52–53, 56–57).[3] Plaintiff does not, however, specifically allege either in the facts or in the allegations of Count Five that Shaw and DeLoach failed to properly implement a specific training program or policy or to challenge either Defendant's actions with respect to existing policies. Plaintiff's vague and conclusory allegations regarding existing procedures, without any additional connection to the alleged lack of proper training, is insufficient to defeat sovereign immunity on the negligent training claim. *See Gill v. City of Margate*, No. 25-60913-CIV, 2026 WL 796803, at *6 (S.D. Fla. Mar. 23, 2026); *Cruz v. Miami-Dade Cnty.*, No. 24-23132-Civ, 2025 WL 1435719, at *8 (S.D. Fla. Apr. 29, 2025), *adopted*, 2025 WL 1432784 (S.D. Fla. May 19,

[3] Although DeLoach did not seek dismissal of Count Five on this basis in his Motion, the Court may address the issue *sua sponte* because the argument raises a question of sovereign immunity. *See Lewis*, 260 F.3d at 1266; *see also Green v. Graham*, 906 F.3d 955, 961 (11th Cir. 2018) ("Longstanding principles of federal law oblige us to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction, and the Supreme Court has long held that state sovereign immunity partakes of the nature of a jurisdictional bar in certain respects." (quotations omitted)); *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1259 (11th Cir. 2001).

2025); *Landsman v. City of Vero Beach*, No. 13-14375-CIV, 2013 WL 12077480, at *3 (S.D. Fla. Dec. 12, 2013). Therefore, Count Five will also be dismissed.

"A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Plaintiff has neither filed a motion for leave to further amend his pleading nor requested such relief in his responses. Nevertheless, because it is not clear that Plaintiff can allege no set of facts under which Counts Three and Five could proceed, the Court will grant Plaintiff one final opportunity to amend his claims.

## IV. CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Chief Jason L. Shaw Sr.'s Motion to Dismiss (Doc. 21) is **GRANTED**.
2. Defendant Sheriff DeLoach's Motion to Dismiss (Doc. 22) is **GRANTED**.
3. Counts Three and Five of the Amended Complaint (Doc. 20) are **DISMISSED without prejudice**.
4. On or before **September 4, 2026**, Plaintiff may file an amended pleading to correct the deficiencies noted herein with respect to Counts Three and Five. The failure to timely do so may result in the dismissal of such claims without further notice.

5. Defendant Dustin Douglas's Motion to Dismiss (Doc. 24) is **GRANTED** and service of process is **QUASHED** as to the Dustin Douglas residing at 3444 Rustic Oak Trail, Middleburg, Florida.

**DONE AND ORDERED** in Jacksonville, Florida on August 21, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party